IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| DEREK VAN VORIS, Individually, and as Legal Guardian of his wife KELLEE VAN VORIS, an incompetent adult, and as next friend of AUSTIN VAN VORIS and ALEXANDER VAN VORIS, their minor children; and KENNETH G. BUTLER and PEGI S. BUTLER, both Individually and as Legal Guardians of ASHLEE VAN VORIS a/k/a Ashlee Skehan and AARON VAN VORIS a/k/a Aaron Skehan, minor children, Plaintiffs, § § § § § § § § § § § § § | |
| v. § | EP-03-CA-248-DB |
| UNITED STATES OF AMERICA, Defendant. § § § § § | |

## MEMORANDUM OPINION AND ORDER

On this day, the Court considered Defendant, the United States of America's "Motion For Transfer Of Venue" ("Motion"), filed in the above-captioned cause on October 6, 2003. Plaintiffs filed a "Response To Defendant's Motion To Transfer Venue" ("Response") on October 20, 2003. On October 23, 2003, Defendant filed a "Reply To Plaintiffs' Response To Motion For Transfer Of Venue" ("Reply").

In its Motion, Defendant asks that the Court transfer this case from the El Paso Division of the Western District of Texas to the Central Division of the District of Utah pursuant to 28 U.S.C. § 1404(a). After due consideration, the Court is of the opinion that Defendant's Motion should be denied.

1

## BACKGROUND

Plaintiff, Derek Van Voris, was on active duty in the U.S. Army from June 1995 to May 1998. In 1997 he and his family, which consisted of his wife and four children, were stationed at Ft. Bliss, Texas.[1] While stationed at Ft. Bliss, Mr. Van Voris' wife, Plaintiff Kellee Van Voris ("Patient") received various treatments at William Beaumont Army Medical Center ("W.B.A.M.C."), a military hospital owned and operated by the Defendant and located on Ft. Bliss. The Patient received routine treatment at W.B.A.M.C. beginning April 14, 1997.[2] She received a tubal reversal on September 8, 1997 for which she stayed overnight and was released on September 9, 1997. On September 11, 1997, the Patient was readmitted when she returned to W.B.A.M.C. complaining of shortness of breath and pain in her calf. The medical staff ruled out a pulmonary embolism and discharged her on September 12, 1997. On September 30, 1997, Patient was referred to the Internal Medicine Service ("I.M.S.") at W.B.A.M.C. for her symptoms of slight, but transitory shortness of breath. On October 30, 1997, after being evaluated for this condition, Patient was ordered to undergo blood work and scheduled to receive a "routine"[3] echocardiogram (an ultrasound exam of the heart) on or about November 13, 1997. Later the same day (October 30, 1997), Patient reported to the emergency room at W.B.A.M.C.

---

[1] Ft. Bliss is a military post located within El Paso County, Texas.

[2] Because Plaintiffs have not specified wether all or part of the treatment received by Patient at W.B.A.M.C. from April 14, 1997 through October 31, 1997 make up the alleged negligent behavior of Defendants, the Court has included a listing of treatments given to the Patient at W.B.A.M.C. during the six and a half month time period she was treated at that facility.

[3] The medical record on which the referral is documented includes a list of classifications, ("ROUTINE", "TODAY", "72 HOURS", and "EMERGENCY") regarding the urgency of any physician-requested activity listed therein; "routine" is used here only to impart an accurate depiction of the medical record.

2

complaining of abdominal pain. She was admitted and released the following day when her symptoms resolved. It is unclear from the record whether the ordered blood work was performed; however, the recommended echocardiogram was not given to Patient during her hospital stay in October. Moreover, the Patient did not keep the exam appointment scheduled on or about November 13, 1997.

On December 31, 1997, while visiting family in Utah, Patient suffered a brainstem stroke for which she was taken to the emergency room at Davis Hospital and Medical Center ("D.H.M.C.") in Layton, Utah. Within a few hours, the Patient was air lifted to Latter Day Saints Hospital ("L.D.S.H.") in Salt Lake City, Utah. Patient was comatose and remained at L.D.S.H. from December 31, 1997 to January 23, 1998 when she was transferred to South Davis Care Center ("S.D.C.C.") in Layton. In May of 1998, Patient's husband, Plaintiff Derek Van Voris received a "Hardship Discharge" from the military in order to move his family and household to Utah permanently. Since July 1999, all members of the Van Voris family, including Patient, have resided in Ogden, Utah with Patient's parents, who care for her. On May 21, 2001, the Patient was seen by a neurologist in Layton for evaluation of her stroke. On June 8, 2001, Patient underwent an echocardiogram at Utah Cardiology, P.C. The echocardiogram revealed an atrial septal defect (a hole between the chambers of the heart), which was later determined to be the cause of Patient's stroke.

On June 27, 2003, Derek Van Voris, individually and as guardian of Patient, their four children, by and through their respective guardians, and Patient's parents (collectively, "Plaintiffs"), filed suit against the Defendant pursuant to the Federal Tort Claims Act. Plaintiffs allege that Defendant, through its agents, servants, and/or employees acting within their course and scope of employment, provided substandard and negligent care to the Patient, which resulted

3

in different degrees of personal injury to all Plaintiffs. Plaintiffs aver that Patient should have been given an echocardiogram because the symptoms Patient complained of while at W.B.A.M.C. would have caused a reasonably prudent healthcare provider to timely obtain an echocardiogram. Plaintiffs argue that Defendant's failure to complete an echocardiogram resulted in their injuries. The instant motion followed.

## DISCUSSION

In the instant Motion, Defendant petitions the Court to transfer venue in this cause to the District of Utah pursuant to 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of parties and witnesses, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C.A. § 1404(a) (West 1993). The party seeking to transfer venue pursuant to 28 U.S.C. § 1404(a) bears the burden of demonstrating that the Court should transfer venue. *Gundle Lining Constr. Corp. v. Fireman's Fund Ins. Co.*, 844 F. Supp. 1163, 1165 (S.D. Tex. 1994). The Court notes that it is undisputed that the instant cause could have been properly brought in the District of Utah pursuant to 28 U.S.C. § 1402(b), which states that a "civil action on a tort claim against the United States . . . may be prosecuted only in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred." 28 U.S.C.A. § 1402(b) (West 1993). Because there is no dispute as to where Plaintiffs reside, the Court will focus on the latter issue.

The purpose of a venue transfer is to prevent the waste of time and money on the part of the parties, the litigants, and the public. *Van Dusen v. Barrack*, 376 U.S. 612, 616, 84 S. Ct. 805, 809, 11 L. Ed. 945 (1964) (citations omitted), *Thompson v. Handa-Lopez, Inc.*, 998 F. Supp. 738, 745 (W.D. Tex. 1998). In ruling on a motion to transfer venue, a court must make a

"flexible and individualized analysis," weighing factors that are specific to the case. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S. Ct. 2239, 2244, 101 L. Ed. 2d 22 (1988).

The Court must consider "all the relevant factors to determine whether or not on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989) (internal quotation marks omitted) (quoting 15 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3847 (2d ed. 1986)). The factors considered by the Court are as follows: (1) the availability and convenience of witnesses, (2) the availability and convenience of the parties, (3) the place where the alleged wrong took place, (4) the location of books and records, (5) the possibility of delay or prejudice if transfer is granted, (6) location of counsel, and (7) the plaintiff's choice of forum. *See, Hall v. Envtl. Chem. Corp.*, 64 F. Supp. 2d 638, 644 (S.D. Tex. 1999). The Court will analyze each factor in turn.

**I. Availability and Convenience of the Witnesses**

The availability and convenience of key witnesses is considered to be the most important of the factors that courts evaluate in considering a transfer of venue. *Dupre v. Spanier Marine Corp.*, 810 F. Supp. 823, 825 (S.D. Tex. 1993).

"Regardless of whether transfer is sought for key party or non-party witnesses, the moving litigant must make more than a general allegation that the key witnesses are inconveniently located." *Mohamed v. Mazda Motor Corp.*, 90 F. Supp. 2d 757, 775 (E.D. Tex. 2000). Defendant lists twenty key witnesses who are expected to testify. Three of these witnesses rendered treatment to the Patient at hospitals located outside of Texas and Utah, none of them reside in Texas or Utah, and all three would have to travel to either venue. Seven of the Defendant's key witnesses treated the Patient at W.B.A.M.C., but are no longer employed at

W.B.A.M.C. One of these witnesses resides in Texas, but none reside in Utah. Defendant concedes that its witnesses will travel to testify in either venue, which does not tilt this factor in one party's direction. The remaining key witnesses listed by Defendant treated the Patient at some point between the time of her stroke and the time that she underwent an echocardiogram. These ten witnesses reside in Utah. Defendant concedes that the remaining ten witnesses will still have to travel if the case is transferred, but it contends that transferring the case to the District of Utah will reduce the inconvenience of those witnesses who reside in Utah.

Defendant argues that the Western District of Texas is a less convenient forum for key witnesses residing in Utah, but Defendant does not substantiate its claim that the Western District of Texas would be an inconvenient venue for the witnesses listed. Defendant merely makes a general allegation that it would reduce the inconvenience for those witnesses who live in Utah to travel within the state. Furthermore, Defendant merely speculates that it would be more convenient for those witnesses who do not live in either Texas or Utah to travel to the District of Utah. Moreover, Defendant does not provide evidence that any of the witnesses listed would be unwilling or unable to travel to the Western District of Texas, or that a transfer of venue would be more likely to compel any of the witnesses to testify.

Defendant does not make more than a general allegation that key witnesses can be better accommodated, and Plaintiffs make no allegation that Transfer of Venue would inconvenience their key witnesses. Because Defendant has not met its burden, this factor does not weigh in favor of its request to transfer.

### II. Availability and Convenience of the Parties

Defendant maintains that it would decrease its litigation costs if venue was transferred to the District of Utah; therefore, it is inconvenient for the United States to try this

6

case in the Western District of Texas. However, as Plaintiffs correctly point out, trial in the current venue would not inconvenience Defendant, as it is represented by the U.S. Attorney's office which has an office located in the El Paso Division of the Western District of Texas. The Court notes that paying ordinary travel expenses for its own witnesses is not an inconvenience to Defendant; it is simply a cost of litigation.

Defendant further contends that the Western District of Texas is an inconvenient forum for the Plaintiffs because their cost and burden of travel will increase with travel outside Utah. The Defendant cannot assert Plaintiffs' inconvenience as a reason to have the court transfer venue. *American Can Co. v. Crown Cork & Seal Co.*, 433 F. Supp. 333, 338 (E.D. Wis. 1977). As such, the Court does not find Defendant's argument convincing.

Furthermore, Plaintiffs reside in Utah, but they have chosen the Western District of Texas as their choice of forum because the alleged negligent conduct and omissions occurred at Ft. Bliss, the facilities where the alleged negligent conduct occurred are located at Ft. Bliss and the records of Patient's treatment at W.B.A.M.C. are located at Ft. Bliss. The Plaintiffs contend that they are not inconvenienced by travel to their chosen forum, where the evidence of the alleged negligent conduct is located; however, they would be inconvenienced if venue was transferred to the District of Utah, where none of the evidence is located. The Court agrees with Plaintiffs. Because transfer to the District of Utah would inconvenience the Plaintiffs while retaining the present forum would not inconvenience either party, the Court is of the opinion that the availability and convenience of the parties weighs in favor of retaining jurisdiction in the Western District of Texas.

7

### III. Place of the Alleged Wrong

There can be more than one county in which a substantial part of the events giving rise to the claim occurred. *Seariver Maritime Fin. Holdings v. Pena*, 952 F. Supp. 455, 458 (S.D. Tex. 1996). Defendant asserts that the culmination of the alleged negligent conduct, a stroke, transpired in Utah, thus making both the District of Utah and the Western District of Texas the places where the alleged wrong occurred. Plaintiffs concede that the stroke occurred in Utah, but allege that the acts or omissions that constitute negligence occurred solely at W.B.A.M.C.

The Court is not convinced that Defendant has shown that enough of the events took place in Utah to overcome Plaintiffs' choice of forum. Thus, the Court is of the opinion that the place of the alleged wrong weighs against granting Defendant's Motion.

### IV. Location of Books and Records

Defendant does not contend that there are any books or records in Utah or that it would be impractical to transport any books and records from the District of Utah to the Western District of Texas. Defendant's sole contention on this point is that there are sources of proof located in Utah that need to be examined in preparation for trial. As previously stated, all records from Patient's treatment at W.B.A.M.C. are located at Ft. Bliss. Moreover, Defendant makes no argument as to how this element should be factored into the Court's decision. Plaintiffs aver that they chose a venue where the alleged negligence took place, and where the records of such treatment are located. Plaintiffs support their position by maintaining that the records at Ft. Bliss are essential to their claims. The Court agrees. Since the basis of this action is the evidence of alleged negligence, documented in the W.B.A.M.C. records, the Court is of the opinion that the location of books and records weighs against granting Defendant's Motion.

## V. Possibility of Delay or Prejudice if Transfer is Granted

Defendant's only claim regarding this element is that a transfer to the District of Utah will likely speed up resolution of the case due to the convenience of the parties and witnesses. Plaintiffs do not make any argument as to the possibility of delay or prejudice if transfer is granted. The Defendant filed the instant Motion on October 6, 2003, well in advance of the August 2004 trial date. Neither of the parties would be inconvenienced or prejudiced by travel to either forum because all witnesses, parties and counsel will have to travel regardless of where the case is tried. Thus, the Court does not find Defendant's argument persuasive. Therefore, this element does not weigh in favor of Defendant's request to transfer venue.

## VI. Location of Counsel

Defendant makes no claim that the District of Utah would be a more convenient forum for counsel. Counsel for Plaintiffs is located in Austin, Texas and the Assistant U.S. Attorney assigned to defend this cause is located in San Antonio, Texas. There is no showing by either party that counsel cannot litigate in either Texas or Utah. However, the Court opines that travel to El Paso would be more convenient since all attorneys are located in Texas.

## VII. Plaintiff's Choice of Forum

It is well settled that a Plaintiff's choice of forum is given considerable weight and will not be disturbed unless other factors weigh substantially in favor of transfer. *Texas Eastern Transmission Corp. v. Marine Office-Appleton & Cox Corp.*, 579 F.2d 561, 567 (10th Cir. 1978). Here, Defendant has failed to show that any factors weigh substantially in favor of transfer. The Court finds therefore, that Defendant has not proven its burden and is unwilling to disturb Plaintiff's choice of forum.

Thus, of the seven relevant factors considered, all weigh against transferring venue to Utah. Consequently, the Court finds that Defendant has failed to meet its burden of

showing that the balance of convenience and justice substantially weigh in favor of transferring this cause to the District of Utah.

Accordingly, **IT IS HEREBY ORDERED** that Defendant's "Motion For Transfer Of Venue" is **DENIED**.

**SIGNED** this **19th** day of **July, 2004.**

---
THE HONORABLE DAVID BRIONES
UNITED STATES DISTRICT JUDGE