

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| DEREK VAN VORIS, Individually, | § | |
| and as Legal Guardian of his wife | § | |
| KELLEE VAN VORIS, an incompetent | § | |
| adult, and as next friend of AUSTIN | § | |
| VAN VORIS, ALEXANDER VAN | § | |
| VORIS, and ASHLEE VAN VORIS | § | |
| their minor children, | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | EP-03-CA-248-DB |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

On this day, the Court considered Defendant United States of America's "Motion To Dismiss Plaintiff's Complaint, Or In The Alternative Motion For Summary Judgment," filed in the above-captioned cause on July 16, 2004. On July 27, 2004, Plaintiffs filed a "Response To Defendant's Motion To Dismiss," ("Response"). On August 3, 2004, Defendant filed a "Reply To Plaintiff's Response To Motion To Dismiss Plaintiff's Complaint, Or In The Alternative, Motion For Summary Judgment" ("Reply").

After due consideration, and for the reasons that follow, the Court is of the opinion that Defendants' Motion should be denied.

### BACKGROUND

Plaintiff, Derek Van Voris, was on active duty in the U.S. Army from June 1995 to May 1998. In 1997 he and his family, which consisted of his wife and four children, were



stationed at Ft. Bliss, Texas.[1]  While stationed at Ft. Bliss, Mr. Van Voris' wife, Plaintiff Kellee

Van Voris ("Patient") received various treatments at William Beaumont Army Medical Center

("W.B.A.M.C."), a military hospital owned and operated by the Defendant and located on Ft.

Bliss.  The Patient received routine treatment at W.B.A.M.C. beginning April 14, 1997.[2]  She

received a tubal reversal on September 8, 1997 for which she stayed overnight and was released

on September 9, 1997.  On September 11, 1997, the Patient was readmitted when she returned to

W.B.A.M.C. complaining of shortness of breath and pain in her calf.  The medical staff ruled out

a pulmonary embolism and discharged her on September 12, 1997.  On September 30, 1997,

Patient was referred to the Internal Medicine Service ("I.M.S.") at W.B.A.M.C. for her

symptoms of slight, but transitory shortness of breath.  On October 30, 1997, after being

evaluated for this condition, Patient was ordered to undergo blood work and scheduled to receive

a "routine"[3] echocardiogram (an ultrasound exam of the heart) on or about November 13, 1997.

Later the same day (October 30, 1997), Patient reported to the emergency room at W.B.A.M.C.

complaining of abdominal pain.  She was admitted and released the following day when her

symptoms resolved.  It is unclear from the record whether the ordered blood work was

---

[1] Ft. Bliss is a military post located within El Paso County, Texas.

[2] Because Plaintiffs have not specified wether all or part of the treatment received by Patient at W.B.A.M.C. from April 14, 1997 through October 31, 1997 make up the alleged negligent behavior of Defendants, the Court has included a listing of treatments given to the Patient at W.B.A.M.C. during the six and a half month time period she was treated at that facility.

[3] The medical record on which the referral is documented includes a list of classifications, ("ROUTINE", "TODAY", "72 HOURS", and "EMERGENCY") regarding the urgency of any physician-requested activity listed therein; "routine" is used here only to impart an accurate depiction of the medical record.

performed; however, the recommended echocardiogram was not given to Patient during her

hospital stay in October.  Moreover, the Patient did not keep the exam appointment scheduled on

or about November 13, 1997.

On December 31, 1997, while visiting family in Utah, Patient suffered a

brainstem stroke for which she was taken to the emergency room at Davis Hospital and Medical

Center ("D.H.M.C.") in Layton, Utah.  Within a few hours, the Patient was air lifted to Latter

Day Saints Hospital ("L.D.S.H.") in Salt Lake City, Utah.  Patient was comatose and remained at

L.D.S.H. from December 31, 1997 to January 23, 1998 when she was transferred to South Davis

Care Center ("S.D.C.C.") in Layton.  In May of 1998, Patient's husband, Plaintiff Derek Van

Voris received a "Hardship Discharge" from the military in order to move his family and

household to Utah permanently.  Since July 1999, all members of the Van Voris family,

including Patient, have resided in Ogden, Utah with Patient's parents, who help care for her.  On

May 21, 2001, the Patient was seen by a neurologist in Layton for evaluation of her stroke.  On

June 8, 2001, Patient underwent an echocardiogram at Utah Cardiology, P.C.  The

echocardiogram revealed an atrial septal defect ("ASD") (a hole between the chambers of the

heart), which was later determined to be the cause of Patient's stroke.

On June 27, 2003, Derek Van Voris, individually and as guardian of Patient, their

four children, by and through their respective guardians, and Patient's parents (collectively,

"Plaintiffs"), filed suit against the Defendant pursuant to the Federal Tort Claims Act.[4]  Plaintiffs

allege that Defendant, through its agents, servants, and/or employees acting within their course

---

[4] On August 13, 2004, the Court entered an Order dismissing Plaintiffs Pegi and Kenneth
Butler's claims for filial consortium.

and scope of employment, provided substandard and negligent care to the Patient, which resulted in different degrees of personal injury to all Plaintiffs. Plaintiffs aver that Patient should have been given an echocardiogram because the symptoms Patient complained of while at W.B.A.M.C. would have caused a reasonably prudent healthcare provider to timely obtain an echocardiogram. Plaintiffs argue that Defendant's failure to complete an echocardiogram resulted in their injuries. The instant Motion followed.

**STANDARD**

Since the Defendant confected the instant Motion in such a manner that moves for dismissal of the case under both, Rule 12(b)(6) and Rule 56 standards, the Court is of the opinion that it must treat the Defendant's Motion as a Motion for Summary Judgment under Federal Rule of Civil Procedure 56 because it considers evidence outside the pleadings. FED. R. CIV. P. 12(b) ("If, on a motion . . . to dismiss for failure of the pleading to state a claims upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment . . ."). Here, the Court considers affidavits and attachments thereto incorporated by reference, submitted by both parties. With that, the Court proceeds under a summary judgment standard.

Courts should grant summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). Summary judgment is not proper "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

4

The party that moves for summary judgment - the Defendant in this case - bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which they believe demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The party opposing a summary judgment motion that is supported by evidence must present affirmative evidence in order to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 248-49. When making a summary judgment determination, courts review the evidence and draw inferences therefrom in a light most favorable to the non-movant. *McInnis v. Alamo Cmty. Coll. Dist.,* 207 F.3d 276, 279 (5th Cir. 2000). Substantive law identifies which facts are material. *Anderson*, 477 U.S. at 248.

## DISCUSSION

In its Motion to Dismiss, treated as a Motion for Summary Judgment, the Government in essence argues that, pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680, the Court lacks subject matter jurisdiction because Plaintiffs did not present their claim within two years of accrual, and that, consequently, the case should be dismissed.

"As the sovereign, the United States is immune from suit unless, and only to the extent that, it has consented to be sued." *Truman v. United States*, 26 F.3d 592, 594 (5th Cir. 1994) (citations omitted). Through the FTCA, Congress has consented to allowing the United States to be held liable in tort in much the same manner as a private person. 28 U.S.C.A. § 2674 (West 1994).

Title 28 U.S.C. § 1326(b) grants district courts jurisdiction over tort actions against the United States for money damages involving injury or loss of property caused by the wrongful act or omission of any Government employee acting in the scope of his employment, if a private person would be liable in the same circumstances under the law of the place where the event occurred. Before a tort action may be instituted against the United States, however, the claimant must present a claim to the appropriate federal agency, which must then deny the claim in writing. *Id.* § 2675(a). This requirement is jurisdictional and cannot be waived. *Employees Welfare Comm. v. Daws*, 599 F.2d 1375, 1378 (5th Cir. 1979).

Actions against the United States must be instituted within two years of their accrual by filing a claim with the appropriate administrative agency. 28 U.S.C. § 2401(b). The pertinent portions of the FTCA read as follows: "A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues . . ." 28 U.S.C. § 2401(b). Under the FTCA, accrual of a medical malpractice claim occurs when the plaintiff becomes aware, or should become aware through the exercise of due diligence, of both, the existence of the injury and the cause of the injury. *United States v. Kubrick*, 444 U.S. 111, 113 (1979). A cause of action accrues "when plaintiff knows or has reason to know of the injury which is the basis of the action." *Brown v. Nationsbank, Corp.*, 188 F.3d 579, 589-590 (5th Cir. 1999).

"A plaintiff . . . armed with the facts about the harm done to him, can protect himself by seeking advice in the medical and legal community. To excuse him from promptly doing so by postponing the accrual of his claim would undermine the purpose of the limitations statute, which is to require the reasonably diligent presentation of tort claims against the

6

government. *Ramming v. United States*, 281 F.3d 158, 162 (5th Cir. 2001) citing *Kubrick*, 444 U.S. 111, 123, 100 S.Ct. 352 (1979).

Here, Defendant argues that Plaintiffs did nothing to investigate the cause of the Patient's injury until three and a half years after she suffered a brain stem stroke. To buttress its position, the Defendant sites to the symptoms that Patient experienced (e.g. shortness of breadth, heart palpitations, swelling in her legs, and chest pain) when she reported to W.B.A.M.C. prior to suffering a brain stem stroke. According to the Defendant, the cause could have been determined within days of her stroke if she had simply "sought professional advice from a lawyer or other expert." In essence, Defendant purports that Plaintiffs sat on their rights until filing a claim with the Department of the Army on May 21, 2003.

In their Response, Plaintiffs naturally disagree by averring that the cause of Patient's stroke was first learned on June 8, 2001, when she underwent an echocardiogram that identified an ASD (a hole between the chambers of the heart). Plaintiffs aver that the injury occurred on December 31, 1997, but the cause of the injury was not known until June 8, 2001, when the echocardiogram was performed. Plaintiffs aver that the cause was undiagnosed until June 2001. The spirit of Plaintiffs' arguments demonstrate that Plaintiffs did what they could to reasonably equip themselves with information that would provide answers about Patient's condition. Plaintiffs offered notes by treating physicians to evince they were uncertain, unclear, and did not know what caused the brain stem stroke. The Court agrees. Therefore, the claims they filed in May 2003, where within the two-year statute of limitations called for under the FTCA.

The Court is of the opinion that Plaintiffs diligently sought to get answers from experts in the field of medicine; answers that did not come until June 8, 2001. It would be a

different situation if there was evidence that treating physicians provided Plaintiffs with a plausible explanation as to the cause before the June 2001 date.  Once the cause of injury was made known to Plaintiffs' on June 8, 2001, their two-year clock started to run.  Their window of opportunity would close on June 8, 2003 if they did not file a claim with the Department of the Army.  Therefore, the Plaintiffs are not barred from bringing this cause of action after the claims filed in May 2003 were denied.

## CONCLUSION

Because the sole basis for the instant Motion hinges on Plaintiffs filing an untimely claim, and the Court is of the opinion that Defendant's position is unfounded, there are no additional issues for the Court to scrutinize.  Therefore, the Court is of the opinion that Defendant's "Motion To Dismiss Plaintiff's Complaint, Or In The Alternative Motion For Summary Judgment" should be denied.

Accordingly, **IT IS HEREBY ORDERED** that the "Motion To Dismiss Plaintiff's Complaint, Or In The Alternative Motion For Summary Judgment," filed on July 16, 2004, by Defendant United States of America is **DENIED**.

**SIGNED** this **19th** day of **August, 2004.**

THE HONORABLE DAVID BRIONES
UNITED STATES DISTRICT JUDGE